984 So.2d 751 (2008)
STATE of Louisiana
v.
Christopher M. BUCKENBERGER.
No. 2007 KA 1422.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
*753 Walter Reed, District Attorney, Covington, LA, Kathryn W. Landry, Baton Rouge, LA, for Plaintiff/Appellee, State of Louisiana.
Prentice L. White, Baton Rouge, LA, for Defendant/Appellant, Christopher M. Buckenberger.
Christopher M. Buckenberger, Angola, LA, Defendant/Appellant, Appearing pro se.
Before CARTER, C.J., PETTIGREW and WELCH, JJ.
CARTER, C.J.
The defendant, Christopher M. Buckenberger, was charged by amended bill of information with one count of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1 (Count I); one count of attempted forcible rape, a violation of La. R.S. 14:27 and 14:42.1 (Count II); one count of second degree kidnapping, a violation of La. R.S. 14:44.1 (Count III); and two counts of public intimidation, violations of La. R.S. 14:122 (Counts IV and V). He pled not guilty on all counts and, following a jury trial, was found guilty on all counts by unanimous verdict. Thereafter, the State filed a habitual offender bill of information against the defendant, alleging in regard to Count I that he was a fourth or subsequent felony habitual offender.
On Count I, the defendant was sentenced to twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence. On Count II, he was sentenced to twenty years at hard labor, with the court recommending that he should not be eligible for diminution of sentence for good behavior. On Count III, he was sentenced to twenty years at hard labor, two years without benefit of parole, probation, or suspension of sentence. On each of Counts IV and V, the defendant was sentenced to five years at hard labor. The court ordered that all sentences imposed run concurrently with each other, and the defendant was given credit for time served.
The defendant moved for reconsideration of sentence on Counts I-V, but the motion was denied. His motions for arrest of judgment and a new trial also were denied. Following a hearing, the defendant was adjudged a third-felony habitual offender in regard to Count I, the sentence previously imposed on Count I was vacated, and he was sentenced on Count I to be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant appeals, designating one counseled and five pro se assignments of error. In his sole counseled assignment of error, the defendant challenges the sufficiency of the evidence offered to support his convictions on Counts I, II, and III. In his pro se assignments of error, the defendant challenges: (1) the refusal to stay his trial "for recusal purposes;" (2) the denial of his right to a speedy trial; (3) the lack of probable cause to file the bill of information; (4) the denial of effective assistance of counsel; and (5) the denial of his right of confrontation because the victim did not testify at trial. For the reasons that follow, *754 we affirm the conviction, habitual offender adjudication, and sentence on Count I, and the convictions and sentences on Counts II-V.

FACTS
During the afternoon of February 22, 2006, Michael Shane Stephens was fishing at the Madisonville Boat Launch. He saw a woman, later identified as the victim, C.G.,[1] get out of a car and squat beside it. Stephens testified that he saw the defendant "attempting to run [the victim] over several times" with the car. Stephens also heard the defendant tell the victim, "[a]s soon as I catch you, I'm going to kill you." The defendant chased the victim for five or ten minutes in his vehicle. After she went between some parked vehicles, the defendant continued the chase on foot, ultimately catching the victim and slamming her to the ground. The victim was bleeding from the top of her head, her face, and her shoulder. Stephens attempted to use his cellular telephone to summon help and told another bystander to get the police.
Madisonville Police Officer Hayward Jarrell arrived at the scene and found the defendant on top of the victim in his vehicle. The defendant had his hands around the victim's neck. The victim's shirt was pulled over her head, exposing her breasts, and the defendant's pants were down, exposing his bare buttocks. The victim was hysterical, and her face, elbows, and knees were bleeding.
The defendant was handcuffed. He began kicking and spitting and told Officer Jarrell and Stephens, "I'm going to kill all of you all[.] . . . I done twelve years at Angola, and I'll be  I'm going to kill you all. I'm not scared of you all."
The victim told Officer Jarrell that she had met the defendant in Shreveport. She traveled with him to Bogalusa and stayed with him for a short period of time, but she had become a hostage because he threatened to kill her if she tried to leave him. The victim also told Officer Jarrell that the defendant had tried to run over her with his car, and after he caught her, he knocked her to the ground, dragged her to his car by her hair, and was taking her clothes off when he was interrupted. Officer Jarrell detected the odor of alcohol on both the victim's and the defendant's breaths. However, he did not believe that the victim was intoxicated because her speech was not slurred.
Over defense objection, the State also presented records and testimony concerning the defendant's commission of forcible rape against C.L.[2] on November 1, 1981, and against L.H.[3] on November 9, 1981. C.L. testified that on November 1, 1981, she agreed to give the defendant a ride in her car after he told her his friend had his car keys and he needed a ride to the friend's home to get them. After directing C.L. to a secluded area, the defendant told her to stop the vehicle so he could use the bathroom. When the defendant returned to the car, he demanded that C.L. exit the vehicle. When she refused, the defendant grabbed her by the hair and began hitting her. After forcing C.L. out of her car, the defendant raped her.
L.H. testified that in November of 1981, she agreed to give the defendant a ride in her car after he told her his car had been towed away. After directing L.H. to a *755 secluded area, the defendant told her to stop the vehicle so he could use the bathroom. When the defendant returned to the car, he told L.H. that it was "[t]ime for us to have sex." When L.H. refused to have sex with the defendant, he started strangling her and hitting her. When L.H. begged the defendant to release her, he told her to stop begging or he would kill her. The defendant then raped L.H. in her car.
The defendant also testified at trial. He conceded he had previously been convicted of simple escape, forcible rape, second degree battery, and sexual battery. However, he denied attempting to kill and rape the victim in connection with the instant offenses. The defendant claimed he and the victim had been staying together at the Sportsman Inn in Bogalusa and had been working together. He claimed on the day of the incident, he fell asleep after he and the victim had been drinking in his car. He claimed he woke up when the victim got out of his car and slammed the door. The defendant stated the victim was intoxicated and was upset because he was unable to have sex with her due to his erectile dysfunction, a condition from which he claimed he had suffered since 1975. The defendant explained the pants he was wearing were too big for him and would fall down if he got out of the car, so he was following the victim with his car. He claimed the victim fell down, not because he pushed her, but because she was drunk. He claimed he was just talking to the victim in the car when Officer Jarrell arrived on the scene. He claimed his pants fell down because they were wet from his swimming in them. The defendant claimed that, after he politely asked to use a cellular telephone to call an attorney, Officer Jarrell threw him to the ground. He claimed he told Officer Jarrell, "Look, mister, I've been in Angola and I know what that game is, and I've got a past record." The defendant also claimed he threatened to sue Officer Jarrell, telling him he was "treating [the defendant] wrong" and "doing wrong." The defendant also claimed he had an alibi for the dates he allegedly raped C.L. and L.H., explaining his guilty pleas to those offenses were involuntary.

SUFFICIENCY OF THE EVIDENCE
In his sole counseled assignment of error, the defendant argues the State presented insufficient evidence to support his convictions for attempted second degree murder, attempted forcible rape, and second degree kidnapping.[4] He further argues the State substituted the testimony of two alleged rape victims from the early 1980s for the testimony of the victim.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, appellate courts must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove" in order to convict, every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0.601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157, XXXX-XXXX (La.11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).
*756 When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 730 So.2d at 487. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27 A.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1 A(1).
Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. La. R.S. 14:41 A. Forcible rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1 A(1).
Second degree kidnapping is the forcible seizing and carrying of any person from one place to another when the victim is physically injured of sexually abused; or the imprisoning or forcible secreting of any person when the victim is physically injured or sexually abused. La. R.S. 14:44.1 A(3), B(1), B(3).
Louisiana Code of Evidence article 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Louisiana Code of Evidence article 412.2 provides:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
*757 Article 412.2 was a legislative response to earlier decisions from the Louisiana Supreme Court refusing to recognize a "lustful disposition" exception to the prohibition of other crimes evidence under La.Code Evid. 404. The language of Article 412.2 closely follows Fed.R.Evid. 413, with the proviso that the evidence addressed therein "may be admissible . . . subject to the balancing test provided in Article 403." State v. Williams, XXXX-XXXX (La.10/15/02), 830 So.2d 984, 986-987. Thus, the jurisprudence interpreting the federal rule is highly instructive. See Wright, 730 So.2d at 489.
The federal courts have determined that Fed.R.Evid. 413 is based upon the premise that evidence of other sexual assaults is highly relevant to prove the propensity to commit like crimes and often justifies the risk of unfair prejudice. The federal courts have concluded that Rule 413 supersedes Fed.R.Evid. 404(b)'s other crimes evidence restriction and allows the government to offer evidence of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense. The federal courts have stated that there is no inherent error in admitting evidence under Rule 413 that would be inadmissible under Rule 404(b). If Rule 413 evidence was always too prejudicial under Rule 403, Rule 413 would never lead to the introduction of evidence. See State v. Olivieri, 2003-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218.
After a thorough review of the record, we are convinced the evidence viewed in the light most favorable to the State proved, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted second degree murder, attempted forcible rape, and second degree kidnapping. The verdicts rendered against the defendant indicate the jury accepted the testimony of the State's witnesses and rejected the testimony of the defendant. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331. The jury reasonably rejected the hypothesis of innocence presented by the defendant's testimony (that the defendant was trying to calm the victim who was upset with him because he could not have sex with her), and the evidence did not support another hypothesis that raised a reasonable doubt. In reviewing the evidence, we cannot say that the jury's determinations were irrational under the facts and circumstances presented to them. See State v. Ordodi, XXXX-XXXX (La.11/29/06), 946 So.2d 654, 662. Further, evidence of the defendant's commission of crimes involving sexually assaultive behavior against C.L. and L.H. was admissible at trial. The high probative value of the evidence in regard to the defendant's propensity to use force to rape women in and near vehicles was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time.
This assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR
Stay of the Trial
Prior to trial, the defendant moved to recuse Judge DiMiceli. Judge Burris denied the motion, finding the defendant was attempting to recuse Judge DiMiceli because he disagreed with her rulings. The *758 defendant applied to this court for supervisory writs concerning the denial of his motion to recuse, and prior to trial, this court denied the application for supervisory writs. State v. Buckenberger, XXXX-XXXX (La.App. 1 Cir. 3/9/07) (unpublished). Accordingly, there was no reason to stay the trial "for recusal purposes."
Speedy Trial
In regard to the defendant's claim of violation of his right to speedy trial under La.Code Crim. P. art. 701, it is well-settled that, if prosecution is instituted after the statutory period has elapsed but before the hearing is held, the defendant is no longer entitled to release without bail. State v. Varmall, 539 So.2d 45, 46 (La.1989) (per curiam). The defendant was arrested on February 22, 2006, and the bill of information herein was filed on April 27, 2006. The defendant's motion to quash under Article 701 was denied following a hearing on June 30, 2006. Thereafter, this court denied the defendant's application for supervisory writs concerning the denial of his motion to quash. State v. Buckenberger, XXXX-XXXX (La.App. 1 Cir. 7/10/06) (unpublished).
Probable Cause for the Bill of Information
A law enforcement officer effecting an arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. La.Code Crim. P. art. 230.2A. If a probable cause determination is not timely made in accordance with the provisions of Article 230.2 A, the arrested person shall be released on his own recognizance. La. Code Crim. P. art. 230.2 B.
Prior to trial, the defendant moved pro se for dismissal of the charges against him, arguing, inter alia, that he had been denied a forty-eight hour probable cause determination. At the hearing on the motion, defense counsel advised the court that the defendant was challenging the holding of the probable cause hearing on February 27, five days after his arrest. The trial court denied the motion to dismiss, and we find no error. Any right to release was waived once the probable cause determination was made. See State v. Bouie, 598 So.2d 610, 611 (La.App. 4th Cir.1992) ("prevailing case law maintains that a delay is not grounds for arrest of judgment or a new trial, and that once a defendant has proceeded to a significant judicial event, such as a preliminary hearing where probable cause is found, the defendant waives any rights to release.")
Ineffective Assistance of Counsel
The defendant challenges defense counsel's decision to raise the issue of defendant's competency. Because the record permits definitive resolution of defendant's claim of ineffective assistance of counsel, we will address it on appeal. See State v. Miller, 99-0192 (La.9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing *759 that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-860 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
At a pretrial hearing, defense counsel indicated he moved for a competency hearing after talking to the defendant at the jail and because the defendant advised him that he (the defendant) had been the victim of head trauma when he was young. Defense counsel's decision to move for a competency hearing was clearly strategic. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, that must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La. App. 1st Cir.1993).
Right to Confront Witnesses
The defendant argues that he was denied his right to cross-examine the victim, as she did not testify at trial. In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004) (emphasis supplied). Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 2273-2274, 165 L.Ed.2d 224 (2006). Mistaken application of the rule of Crawford is subject to harmless error analysis. State v. Cunningham, 2004-2200 (La.6/13/05), 903 So.2d 1110, 1119.
The victim did not testify during the trial of this matter. During trial, counsel for the State requested the court's permission for Officer Jarrell to testify as to what the victim told him regarding what had just happened to her. Defense counsel objected because, according to defense counsel, the victim's whereabouts were unknown and she was unavailable for cross-examination. The court allowed Officer Jarrell's testimony under the excited utterance exception to the hearsay rule. Under La.Code Evid. art. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule, even though the declarant is available as a witness."
Prior to the court's ruling, Officer Jarrell testified that upon separating the defendant and the victim, the victim was *760 hysterical and bleeding. The victim began to tell Officer Jarrell what happened, but the defendant approached and had to be restrained by Officer Jarrell and other witnesses to the events, including Stephens. Officer Jarrell returned to the victim, who was still hysterical, and she told him what had just happened. We find no error in the trial court's admission of Officer Jarrell's testimony regarding the victim's nontestimonial statements, made during the continuing emergency situation.
Moreover, any Crawford violation would be harmless. Officer Jarrell's testimony concerning the victim's statements was cumulative of his own more detailed eyewitness testimony, as well as Stephens's more detailed eyewitness testimony, concerning the defendant's commission of the offenses at issue.
These assignments of error are without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE ON COUNT I AFFIRMED; CONVICTIONS AND SENTENCES ON COUNTS II-V AFFIRMED.
NOTES
[1] The victim is referenced herein only by her initials. See La. R.S. 46:1844 W.
[2] This victim is referenced herein only by her initials. See La. R.S. 46:1844 W.
[3] This victim is referenced herein only by her initials. See La. R.S. 46:1844 W.
[4] The defendant does not challenge the sufficiency of the evidence in regard to Counts IV and V.