STATE OF LOUISIANA                                 NO. 19-KA-237

VERSUS                                             FIFTH CIRCUIT

DELCOME DAVID EVANS                                COURT OF APPEAL

                                                   STATE OF LOUISIANA


ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 15,144, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING


June 03, 2020


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg


**CONVICTION AFFIRMED; SENTENCE VACATED;**
**REMANDED FOR RESENTENCING AND SEX OFFENDER**
**REGISTRATION NOTIFICATION**
> **JGG**
> **RAC**
> **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Bridget A. Dinvaut
    Justin B. LaCour

COUNSEL FOR DEFENDANT/APPELLANT,
DELCOME DAVID EVANS
    Benny S. George, Jr.

**GRAVOIS, J.**

Defendant, Delcome David Evans, appeals his conviction for forcible rape of a juvenile. For the reasons that follow, we affirm defendant's conviction, vacate defendant's sentence, and remand this matter for resentencing and sex offender registration notification.

## PROCEDURAL HISTORY

On May 28, 2015, the District Attorney for St. John the Baptist Parish filed a bill of information charging defendant, Delcome David Evans, with forcible rape[1] of a juvenile, M.C.,[2] in violation of La. R.S. 14:42.1. Defendant was arraigned and pled not guilty on June 17, 2015.

Trial commenced before a twelve-person jury on April 10, 2018, and concluded on April 12, 2018, with a verdict of guilty as charged.

On May 9, 2018, defendant filed a motion for post-verdict judgment of acquittal and motion for a new trial. On that same date, the State filed a habitual offender bill of information alleging defendant to be a second-felony offender.[3] The trial court denied defendant's motion for a new trial on May 10, 2018. On June 20, 2018, the trial court denied defendant's motion for post-verdict judgment of acquittal. Thereafter, a habitual offender hearing was held after which the trial court found defendant to be a second-felony offender under La. R.S. 15:529.1 and sentenced defendant to fifty-five years imprisonment[4] with the Department of

---

[1] Forcible rape is now known as second degree rape. *See* La. R.S. 14:42.1(C).

[2] In the interest of protecting minor victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), the judges of this Court have adopted a policy that this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim). *State v. Ross*, 14-84 (La. App. 5 Cir. 10/15/14), 182 So.3d 983, 985, n. 3.

[3] In the habitual offender bill, it was alleged that defendant was previously convicted of possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A) on June 28, 2000, under docket number 399-398 in Criminal District Court for the Parish of Orleans, and was sentenced on August 11, 2000, to ten years imprisonment with the Department of Corrections.

[4] The failure to impose an original sentence before a habitual offender adjudication is not error since the original sentence would be vacated upon the defendant's sentencing as a habitual offender. *State v. Brooks*, 00-106 (La. App. 5 Cir. 9/26/00), 769 So.2d 1242.

Corrections.[5] After sentencing, defendant filed a motion to reconsider sentence and a motion for an appeal. The trial court denied defendant's motion to reconsider sentence and granted his motion for an appeal on July 2, 2018. Defendant's appeal follows.

## FACTS

Nineteen-year-old R.C., the victim's sister, testified that in April of 2015, her sister M.C. was thirteen years old.[6] She explained that defendant, Delcome Evans, was dating her mother at the time and would often come to their house in LaPlace, Louisiana. R.C. recalled one particular morning, on April 2, 2015, she was awakened by defendant who was at their front door. R.C. stated that defendant told her that her mother, who was at work at the time, told him that he could sleep at their house. R.C. let defendant in the house and then went to the restroom. When she returned, M.C. was no longer in her bed, but rather was in her mother's bedroom lying down. She explained that defendant put on a movie and convinced R.C. to leave the room to wash her hair extensions, explaining to R.C. that if they did not look nice after they were washed, he was going to buy her new ones. Thus, R.C. left. When she returned to her mother's room, she observed M.C. pulling up her underwear looking as if she was going to cry. M.C. later followed R.C. into the bathroom, and R.C. said she needed to talk to her when they got back from going to purchase the new hair extensions. When they returned from the store, R.C. recalled that defendant left the house abruptly. Once alone with her sister, R.C. asked M.C. whether defendant had ever done "anything" to her, prompting M.C. to walk away. R.C. then grabbed her sister who stated "I'm

---

[5] Although the trial court did not state that the sentence was to be served at hard labor, "a sentence committing a prisoner to the Department of Corrections is necessarily at hard labor." *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618 (citing *State v. Lisenby*, 534 So.2d 996, 998 (La. App. 3rd Cir. 1988)).

[6] M.C.'s date of birth was reported as March 30, 2002.

surprised it took you this long to figure it out." R.C. testified that she and her sister cried and called their mother who took M.C. to the hospital.[7]

The victim, M.C., testified that she was thirteen years old on April 2, 2015, when defendant came over to her house, picked her up out of bed, and brought her into her mother's bedroom. She recalled that her sister R.C. came into the room, and defendant told R.C. to wash her hair extensions to see if she might need new ones. When R.C. left, defendant told M.C. to turn over. She said he then took off her clothes and stuck his "thing" in her. She stated that she tried to get away, but that she could not because defendant pushed her into the pillow. When he was done, defendant told M.C. to "put it" in her mouth. When she did, she recalled the taste of blood. At that time, her sister walked back into the room and she jumped, testifying that she was worried and was secretly trying to pull up her underwear from under the covers. M.C. testified that once she had her clothes back on, she went to the store with defendant and R.C. When they returned, defendant was trying to "do it" to her again, but she told him "no," so he left. M.C. stated that when she was in the bedroom with defendant, she felt like she could not leave because she believed defendant might hurt her or her family.[8]

Dr. Jerussa Aita-Levy, a pediatric emergency room physician at Children's Hospital in New Orleans, Louisiana, performed a rape kit on M.C. based upon the history given by M.C. upon her arrival at the hospital on April 2, 2015. Dr. Levy's description of M.C. was that she appeared anxious, nervous, and uncomfortable. Her general examination was within normal limits, which was common in Dr. Levy's experience. Dr. Levy recalled that M.C. reported that while sleeping in her

---

[7] A.L., M.C.'s mother, testified that she did not give defendant permission to go into her house that morning after she had left for work. She recalled that while at work, R.C. called her and told her to come home because defendant had "touched" M.C. When she got home, M.C. told her mother what had happened.

[8] M.C. also recalled a time before the rape when defendant digitally penetrated her, licked her breasts, and licked her "thing."

mother's bed, defendant made her get undressed and put "his thing" in "her private area" and "her mouth." She also reported to Dr. Levy that when her sister entered the room and found them together, she got dressed.

According to Paul Berry, an expert in the field of DNA analysis, the results of the DNA profile obtained from the anal swab taken from M.C. was consistent with being a mixture of DNA from at least two individuals. One of the individual's DNA was found to be M.C.'s, and Mr. Berry could not statistically determine who the other one belonged to. Swabs taken from M.C.'s neck, ear, navel, and inner thigh provided the same results as the anal swab. Further, the DNA profile obtained from the breast swab was consistent with being a mixture of two individuals' DNA: M.C. and defendant.

Detective Michael Pugh of the St. John the Baptist Parish Sheriff's Office testified that he took photographs at the scene of the crime and collected bedding from the room where the reported rape had occurred, which contained a stain of suspected blood or some other type of fluid. However, Detective Pugh testified that because the bedding was not sent for DNA analysis, he could not state with certainty whether the stain on the bedding was in fact blood.

Sergeant Sidney Triche, also of the St. John the Baptist Parish Sheriff's Office, testified that he spoke to M.C. at the hospital and she reported to him that defendant had placed his "thing" inside of her several times and also put it in her mouth. M.C.'s sister, R.C., also told Sergeant Triche that defendant carried M.C. to their mother's bedroom and that she was instructed by defendant to leave the room to fix her hair extensions so that he could take her to buy new ones. When she returned, defendant and M.C. jumped up and looked at her.

Lieutenant Thomas Ricks of the St. John the Baptist Parish Sheriff's Office was working as the lead detective on the case when he arrested defendant[9] on the charge of forcible rape of thirteen-year-old M.C. on April 3, 2015. Lieutenant Ricks testified that after M.C. was examined at Children's Hospital, M.C. and R.C. met him at the Criminal Investigations Division where they were interviewed about the incident. The information R.C. and M.C. provided during their interviews was consistent with their trial testimony. Lieutenant Ricks further testified that M.C. reported to him that a few weeks prior to the incident, she was alone with defendant in her house watching a movie, and defendant asked M.C. to lay on top of him. When M.C. laid on top of defendant's chest, defendant took his right hand and reached in her underwear and inserted his finger inside of her vagina. Lieutenant Ricks testified that at the time of defendant's arrest, his children's mother answered the door to their residence and at first denied his presence in the home. However, she eventually retrieved defendant at which time he was arrested and advised of his *Miranda*[10] rights. While en route to the police station, Lieutenant Ricks received a call from M.C.'s mother asking if he had arrested defendant because she had just received a call from him during which he pleaded with her "not to do this."[11] At that time, Lieutenant Ricks seized defendant's cell phone and applied for a search warrant.

Dr. Ellie Wetsman, an expert in the field of pediatrics and child abuse pediatrics, testified that she worked at Children's Hospital of New Orleans in the Audrey Hepburn Care Center where she examined thirteen-year-old M.C. on April 15, 2015. M.C. reported to Dr. Wetsman that defendant "put his thing inside me

---

[9] Lieutenant Ricks testified that defendant's date of birth is February 2, 1978; however, the record reflects that defendant's date of birth is October 2, 1978.

[10] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[11] A.L. testified that defendant called her from the police unit after he had been arrested when the police were outside speaking to the mother of defendant's children. During the phone call, defendant begged A.L. "not to do it."

down there," pointing to her private part, and stated that he made her put her mouth "on his thing." She stated that defendant told her he would be gentle. Dr. Wetsman also performed a physical examination on M.C. which was normal, but not unexpected. According to Dr. Wetsman, the absence of physical findings is common in those types of cases, despite M.C.'s report of sexual abuse.

Sergeant Bradley Glaudi of the New Orleans Police Department testified that in 1999, he led an investigation into an aggravated rape involving defendant and his fifteen-year-old cousin for which he was ultimately arrested; however, the case was eventually nolle prossed. According to Sergeant Glaudi, the fifteen-year-old was asleep in her bedroom when defendant, who was approximately twenty-one years old at the time, came into the room, put his hand over her mouth, bent her over the footboard of the bed, and had intercourse with her against her will.

M.K., the victim of the 1999 reported rape, testified that in 1999, when she was fifteen years old, defendant came into the bedroom where she was sleeping and told her that her brothers needed to see her. When she got out of bed, defendant grabbed her, turned her around, and bent her over the bed. She recalled that defendant told her to "shut up" when she stated "please, no" and proceeded to hold her down and penetrate her. After defendant was arrested, she had no further contact with him. M.K. testified that she wanted to pursue charges and was never informed by the State that charges against defendant had been nolle prossed.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that the trial court erred when it permitted evidence of his prior arrest for forcible rape of a juvenile, which occurred fifteen years prior to the instant offense and never resulted in a conviction, to be introduced at trial. He further contends he was denied the opportunity to show how he would have been prejudiced by the admission of the evidence when the trial court denied his request for a contradictory hearing on the

matter. He concludes that the probative value of the evidence did not outweigh its prejudicial effect and was merely used to show he was a man of bad character.

In response, the State avers defendant's prior arrest for forcible rape of a juvenile was relevant and admissible in the prosecution for the instant offense of forcible rape of a thirteen-year-old child. The State maintains that under La. C.E. art. 412.2, evidence of defendant's prior arrest was admissible, and the fact that his prior arrest occurred some time before the instant offense was only one factor to consider when determining whether the probative value of the evidence was outweighed by the prejudicial effect of the evidence. It further asserts that a contradictory hearing was not required to be conducted prior to the admissibility of the evidence of defendant's lustful disposition under La. C.E. art. 412.2. Nevertheless, the State concludes that under a harmless error analysis, the evidence in this case was sufficient to support defendant's conviction even absent the evidence regarding defendant's prior arrest.

On January 23, 2018, the State filed a Notice of Intent Pursuant to La. C.E. art. 412.2, seeking to introduce defendant's 1999 arrest for forcible rape of a juvenile in Orleans Parish. According to the State, charges against defendant were accepted by the Orleans Parish District Attorney but were later nolle prossed. The State submitted that evidence of defendant's prior arrest was admissible and relevant under La. C.E. art. 412.2(A) given the similarities between the 1999 offense and the instant forcible rape offense. The State attached to its notice the New Orleans Police Department reports concerning the 1999 incident and argued in its notice that a pre-trial hearing on the matter was not required under La. C.E. art. 412.2.

At the rule to show cause on the matter on April 9, 2018, the State submitted a copy of defendant's prior sexual assault record from Orleans Parish under seal. Defendant requested a contradictory hearing and the trial court took the matter

under advisement.  On April 10, 2018, the trial court ruled that La. C.E. art. 412.2 did not require a full pre-trial hearing and found defendant's prior sexual assault arrest would be admissible at trial.

At trial, Sergeant Glaudi of the New Orleans Police Department testified regarding the 1999 arrest of defendant surrounding the rape of defendant's fifteen-year-old cousin, M.K.  Defendant's cousin, M.K., also detailed the events of the rape, testifying that while at her house, defendant grabbed her, held her down, and raped her in her bedroom when she was fifteen years old.  Both Sergeant Glaudi and M.K. recalled that defendant was arrested and charged with rape; Sergeant Glaudi noted, however, that the case was eventually nolle prossed for reasons unknown.[12]

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past.  *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28 So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860.  However, such evidence may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule when it tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character.  *State v. Greenup*, 12-881 (La. App. 5 Cir. 8/27/13), 123 So.3d 768, 772, *writ denied*, 13-2300 (La. 3/21/14), 135 So.3d 617.

Specifically, in sex abuse cases, the "lustful disposition" exception applies as set forth in La. C.E. art. 412.2, which provides, in pertinent part:

> When an accused is charged with a crime involving sexually
> assaultive behavior, or with acts that constitute a sex offense

---

[12] At the conclusion of the trial testimony, the trial court instructed the jury that evidence that defendant was involved in the commission of a prior offense, other than the offense for which he was on trial, was to be considered for its bearing on any matter that may be relevant.  It admonished the jury to remember that defendant was on trial only for the offense charged and that they were not to find him guilty of the charged offense merely because he may have committed another offense.

involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

La. C.E. art. 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. *State v. Wright*, 11-0141 (La. 12/6/11), 79 So.3d 309, 316. In enacting Article 412.2, "the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility." Article 412.2 was enacted to loosen restrictions on "other crimes" evidence, and to allow evidence of "lustful disposition" in cases that involve sexual offenses. *Id*. at 317. Thus, pursuant to La. C.E. art. 412.2, evidence of a prior sexual offense indicating that the defendant has a lustful disposition toward children is admissible if relevant and if the probative value outweighs the prejudicial effect. *State v. Olivieri*, 03-563 (La. App. 5 Cir. 10/28/03), 860 So.2d 207, 218.

Here, defendant was charged and convicted of the forcible rape of M.C., a violation of La. R.S. 14:42.1. Forcible rape[13] is defined in La. R.S. 14:42.1(A)(1) as:

> [R]ape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed … [w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

---

[13] Forcible rape is a general intent crime. *State v. Smith*, 35,699 (La. App. 2 Cir. 4/5/02), 815 So.2d 412, 421, *writ denied*, 02-1502 (La. 4/4/03), 840 So.2d 1200. Any sexual penetration, however slight, is sufficient to complete the crime, and emission is not necessary. *See* La. R.S. 14:41(B).

On appeal, defendant's argument is centered upon the prejudicial value of the evidence as it relates to his 1999 arrest on the basis that it occurred over fifteen years prior to the instant offense and never went to trial.

First, for purposes of La. C.E. art. 412.2 testimony, it is not necessary for the defendant to have been charged, prosecuted, or convicted of the described "other acts." *See State v. Layton*, 14-1910 (La. 3/17/15), 168 So.3d 358, 362; *State v. Cole*, 19-0033 (La. App. 1 Cir. 9/27/19), 288 So.3d 146, 154. In *State v. Harris*, 11-253 (La. App. 5 Cir. 12/28/11), 83 So.3d 269, 280, *writ denied*, 12-401 (La. 8/22/12), 97 So.3d 376, this Court held that evidence of a defendant's prior rape of a juvenile, of which he was acquitted, was admissible in a later prosecution for aggravated rape of a juvenile. This Court found that the evidence of the prior rape of the juvenile was not so prejudicial as to warrant exclusion from trial and that the evidence was probative in its ability to show that the defendant had a propensity to remove sleeping children from where they lay and commit forced sexual offenses by using threats, thus establishing a lustful disposition towards children. *Id.*

Further, we find that defendant's contention that his 1999 arrest for the rape of a juvenile was so remote in time as to have no probative value, requiring its exclusion, lacks merit. The fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. *State v. Jackson*, 625 So.2d 146 (La. 1993); *State v. Bolden*, 241 So.2d 490 (La. 1970). Further, as it pertains to sex crimes evidence under La. C.E. art. 412.2, the legislature has not addressed a temporal limitation for sex crimes in La. C.E. art. 412.2. It is only one factor to be considered and prior sex crimes that occurred several years earlier have

not been excluded because of the length of time. Bobby Harges & Russell Jones, LA. PRAC. EVIDENCE, Art. 412.2 (2019 ed.) (citing *State v. Henry*, 11-1137 (La. App. 4 Cir. 10/24/12), 102 So.3d 1016, *writ denied*, 12-2520 (La. 4/26/13), 112 So.3d 838; *State v. Friday*, 10-2309 (La. App. 1 Cir. 6/17/11), 73 So.3d 913, *writ denied*, 11-1456 (La. 4/20/12), 85 So.3d 1258; *State v. Scoggins*, 10-0869 (La. App. 4 Cir. 6/17/11), 70 So.3d 145, *writ denied*, 11-1608 (La. 2/10/12), 79 So.3d 1033; *State v. Buckenberger*, 07-1422 (La. App. 1 Cir. 2/8/08), 984 So.2d 751, *writ denied*, 08-0877 (La. 11/21/08), 996 So.2d 1104; *State v. Willis*, 05-218 (La. App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-0186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668, 166 L.Ed.2d 514 (2006)).

In the instant case, despite the significant lapse in time (over fifteen years) between the two offenses, we find that the trial court did not abuse its discretion in admitting the other crimes evidence under La. C.E. art. 412.2, since the probative value of the prior offense was not substantially outweighed by its prejudicial effect given the similarities between the two instances of rape of minors with whom defendant was familiar.[14]

Lastly, defendant contends he was denied the opportunity to show how he would have been prejudiced by the admission of the evidence when the trial court denied his request for a contradictory hearing on the matter. When the State intends on offering evidence under La. C.E. art. 412.2(B), the State shall "upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes." La. C.E. art. 412.2 does not contain any language requiring a hearing. Further, in *State v.*

---

[14] Regardless, the erroneous admission of other crimes evidence is subject to a harmless error analysis. *Scoggins*, 70 So.3d at 154. Harmless error exists where the guilty verdict actually rendered was "surely unattributable" to the error. *State v. Higginbotham*, 11-0564 (La. 5/6/11), 60 So.3d 621, 623. In the instant case, the victim gave a consistent account of the events surrounding the forcible rape, which was uncontroverted at trial. The testimony of the victim can be sufficient to establish sexual penetration, even though there is an absence of scientific evidence of sexual intercourse. *State v. Hawkins*, 06-739 (La. App. 5 Cir. 9/25/07), 968 So.2d 1082, 1088, *writ denied*, 07-2272 (La. 4/18/08), 978 So.2d 347.

*Williams*, 02-1030 (La. 10/15/02), 830 So.2d 984, 987, the Louisiana Supreme Court held that La. C.E. art. 412.2 does not require the trial court to hold a pre-trial hearing prior to ruling on the admissibility of the evidence.

Here, the State provided defendant with "reasonable notice in advance of trial of the nature of any such evidence it intended to introduce at trial for such purposes," as required by La. C.E. art. 412.2(B), and thus, we find the trial court did not err in denying defendant's request for a contradictory hearing on the matter.

For these reasons, we find that the trial court did not abuse its discretion in admitting evidence of defendant's 1999 arrest for rape under La. C.E. art. 412.2. This assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues the trial court erred when it denied his motion for a mistrial after Juror Tara Reno was removed from the jury and replaced with one of the alternate jurors because she knew the victim and her sister. Defendant further notes that after the State's second witness testified, Juror Marie Mabile advised the court that she recognized the victim's sister; however, Juror Mabile was permitted to remain on the jury after she stated she could be fair and impartial. Defendant contends that while a mistrial is a drastic remedy, it was warranted in this case when two of the jurors waited until after the commencement of trial to call to the court's attention their familiarity with certain witnesses, and that one of the jurors was allowed to remain while the other was replaced. Accordingly, defendant concludes that a mistrial should have been granted.

The State responds that there is no indication the trial court's rulings resulted in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. It argues that the trial court removed Juror Reno and replaced her with

an alternate, thereby correcting any perceived prejudice. Further, it argues that Juror Mabile stated she could be fair and impartial and thus was properly allowed to remain on the jury without objection by defendant. Therefore, the State asserts the trial court did not abuse its discretion when it denied defendant's motion for a mistrial as it pertained to Juror Reno.

On the second day of trial, the court received a handwritten note from Juror Mabile stating "I recognized the older sister that took the stand. I did not know her by name but by face I did. She was a friend of my cousin's daughter. I just wanted to bring that to your attention." Accordingly, the trial court called Juror Mabile into the courtroom for questioning. During questioning by the court, Juror Mabile stated that during jury selection, she did not recognize the names of the witnesses that would be testifying; however, she explained that when the victim's sister took the stand, she recognized her as a friend of her cousin's daughter, noting that she did not personally know the child witness or her name prior to trial. Juror Mabile confirmed that her acquaintance with the victim's sister would not affect her ability to be fair and impartial. The defense then asked one question of Juror Mabile as to whether she had any knowledge of the case prior to trial, to which she replied that she did not. The trial court permitted Juror Mabile to remain on the jury. No objection was lodged by the defense, and the trial of this matter continued.

To the extent defendant argues that Juror Mabile was improperly permitted to remain on the jury, defendant has waived this argument on appeal. La. C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial and he must state the grounds for the objection. La. C.Cr.P. art. 841; *State v. Gaal*, 01-376 (La. App. 5 Cir. 10/17/01), 800 So.2d 938, 949, *writ*

*denied*, 02-2335 (La. 10/3/03), 855 So.2d 294.  Thus, we find that because defendant failed to object to any alleged error that Juror Mabile was permitted to remain on the jury, defendant is not entitled to have this issue reviewed and considered on appeal by this Court.

On the next day (the third day of trial), Juror Reno sent a handwritten note informing the trial court "I know M[.C.] and her sister.  Can I please talk to you." After the note was received, the trial court called Juror Reno into the courtroom for questioning.  Juror Reno confirmed that she knew the victim because she "rode [her] bus" for five years and "watched them grow up," admitting that she did not think she could be fair and impartial.  Thus, Juror Reno was removed from the jury and replaced with alternate Juror Michelle Cazenave.  It was at that time that defendant moved for a mistrial, arguing that "the jurors were not being forthright with the information during the jury selection."  The trial court denied the motion, finding that the jurors could be fair and impartial, to which defendant objected.

A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant that deprives him of a reasonable expectation of a fair trial.  Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.  *State v. Williams*, 14-40 (La. App. 5 Cir. 9/24/14), 151 So.3d 79, 83, *writ denied*, 14-2250 (La. 6/19/15), 172 So.3d 649.

La. C.Cr.P. art. 775 provides, in pertinent part, that "upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."  The trial court has discretion to use the services of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action.  *State v. Tatum*, 09-1004 (La. App. 5 Cir. 5/25/10), 40 So.3d 1082, 1093.

In *State v. Dorsey*, 11-745 (La. App. 5 Cir. 4/24/12), 94 So.3d 49, 55-56, *writ denied*, 12-0998 (La. 10/12/12), 99 So.3d 39, this Court found that the trial court was not required to grant a mistrial after one of the jurors discovered mid-trial that he was acquainted with the robbery victim and communicated this fact to fellow jurors. This Court reasoned that the juror and the victim did not have a close relationship, there was no evidence that the acquaintance between the juror and the victim tainted the jury or the defense, and that the trial court dismissed the juror and replaced him with an alternate. *Id*. at 56.

In *State v. Adams*, 30,815 (La. App. 2 Cir. 6/24/98), 715 So.2d 118, *writ denied*, 98-2031 (La. 3/19/99), 739 So.2d 774, the defendant moved for a mistrial on the grounds that the victim's mother talked to a juror during the trial. After a hearing, the trial court stated that it could discern no prejudice, but out of an abundance of caution removed the juror from the jury. The defense moved for a mistrial, which the trial court denied, giving the defense instead several options for filling the juror's place. The defense agreed to let one alternate juror take her place. On appeal, the defendant contended that he suffered from general prejudice and that the contact between the victim's mother and the juror possibly tainted the entire jury. The Second Circuit stated that the trial court did not abuse its discretion in denying the motion for mistrial. It noted that the juror was dismissed from the jury and replaced with an alternate juror to correct the perceived prejudice. It further found that there was no showing to substantiate that the communication possibly tainted the jury. *Id.* at 121-22.

In the instant case, we find that the trial judge did not abuse his discretion by denying defendant's motion for mistrial. Initially, it is noted that no mandatory grounds for mistrial under Article 770 have been presented here. Additionally, there is no evidence to show that Juror Reno's acquaintance with the victim and her sister gave the victim credibility or otherwise tainted the jury or prejudiced

defendant.  Moreover, we find that the trial judge corrected any perceived prejudice by dismissing Juror Reno from the jury and replacing her with an alternate.  *Adams*, *supra*.

In light of the foregoing, we find that the trial judge did not err by denying the motion for mistrial.  This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, defendant argues he should be resentenced as a habitual offender due to the "substantial changes in the sentencing provisions of La. R.S. 15:529.1, effective November 1, 2017."

In response, the State maintains that whether or not the 2017 ameliorative changes to the habitual offender law apply to defendant is irrelevant as defendant's fifty-five-year sentence is permitted under both the 2015 version and the 2017 version of La. R.S. 15:529.1.  The State further submits that it proved that less than five years had elapsed between the instant offense and the expiration of correctional supervision for the predicate offense charged in the bill of information, and thus, any change to the cleansing period under the new 2017 version of La. R.S. 15:529.1 would have no effect on defendant.

Here, the forcible rape of M.C. occurred on April 2, 2015.  Defendant was convicted on April 12, 2018.  On May 9, 2018, the State filed a habitual offender bill of information alleging defendant to be a second-felony offender based upon a predicate June 28, 2000 conviction for possession with intent to distribute cocaine.  At the habitual offender hearing, the State proved that defendant was sentenced, pursuant to his June 2000 drug conviction on August 11, 2000, to ten years at hard labor.  It further proved that defendant was released on parole on August 15, 2010, and that his parole supervision expired on August 26, 2013.  As previously noted, the instant offense occurred less than two years later on April 2, 2015.  Thus, under either the 2015 version of the habitual offender law (which provided for a ten-year

cleansing period) or the 2017 amended version of the habitual offender law (which currently provides for a five-year cleansing period), defendant's 2000 predicate possession with intent to distribute cocaine conviction falls within either cleansing period version of the law. *See* La. R.S. 15:529.1(C) (2015); La. R.S. 15:529.1(C)(1) (2017).

Additionally, the trial court's imposition of a fifty-five-year enhanced sentence as a second-felony offender is permitted under both the 2015 version and the 2017 version of the habitual offender law. The 2015 version of La. R.S. 15:529.1 subjected defendant to a sentencing range of twenty to eighty years imprisonment, while the 2017 amended version subjects defendant to a sentencing range of 13.3 to eighty years imprisonment. *See* La. R.S. 14:42.1(B); La. R.S. 15:529.1(A)(1) (2015 and 2017). Defendant's sentence falls within the range provided under either version. Thus, we find defendant is not entitled to resentencing based upon the 2017 changes to La. R.S. 15:529.1. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The transcript of the trial court proceedings does not indicate that the trial judge informed defendant of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. While the sentencing minute entry reflects that the trial judge advised defendant of these provisions, in the event of a conflict between the transcript and the minute entry, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Therefore, defendant is hereby advised, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two

years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Montero*, 18-397 (La. App. 5 Cir. 12/19/18), 263 So.3d 899, 909.

Next, the record does not reflect that defendant was notified of Louisiana's sex offender registration requirements pursuant to La. R.S. 15:540, *et seq.* Defendant's conviction for forcible rape of a juvenile (La. R.S. 14:42.1) is defined as a sex offense by La. R.S. 15:541(24)(a).

La. R.S. 15:543(A) states that the trial court "shall provide written notification to any person convicted of a sex offense and a criminal offense against a victim who is a minor of the registration requirements and the notification requirements" of La. R.S. 15:542 and La. R.S. 15:542.1. In addition, La. R.S. 15:543(A) states that the trial court shall use the form contained in La. R.S. 15:543.1 to inform the defendant of the registration and notification requirements. La. R.S. 15:543(A) further requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to the defendant and that an entry be made in the court minutes stating that written notification was provided.

Here, the record indicates that the trial court did not comply with La. R.S. 15:543(A). A trial court's failure to provide this notification constitutes an error patent and warrants a remand for written notification. *See State v. Lampkin*, 12-391 (La. App. 5 Cir. 5/16/13), 119 So.3d 158, 168, *writ denied*, 13-2303 (La. 5/23/14), 140 So.3d 717.

Accordingly, we remand this matter to the trial court for the purpose of providing defendant with the appropriate written notice of his sex offender notification and registration requirements, using the form contained in La. R.S. 15:543.1.

Finally, the transcript reflects that when the trial court sentenced defendant under the habitual offender statute, it imposed a fifty-five-year sentence, but did

not restrict any benefits. The habitual offender statute, La. R.S. 15:529.1(G), provides that any sentence imposed under its provisions "shall be at hard labor without benefit of probation or suspension of sentence." Further, the underlying offense in the referenced statute, La. R.S. 14:42.1, imposes a parole restriction. It requires that "[a]t least two years of the sentence imposed shall be without the benefit of probation, parole, or suspension of sentence." *See* La. R.S. 14:42.1(B). The restrictions on parole eligibility imposed on habitual offender sentences under La. R.S. 15:529.1 "are those called for in the reference statute." *State v. Esteen*, 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 79, n. 24, *writ denied*, 02-1540 (La. 12/13/02), 831 So.2d 983. Accordingly, since the trial court failed to impose these restrictions, we vacate defendant's enhanced sentence and remand this case for resentencing in accordance with La. R.S. 15:529.1(G) and La. R.S. 14:42.1(B). *See State v. Smith*, 09-100 (La. App. 5 Cir. 8/25/09), 20 So.3d 501, 508-09, *writ denied*, 09-2102 (La. 4/5/10), 31 So.3d 357.[15]

## CONCLUSION

For the foregoing reasons, defendant's conviction is affirmed. Defendant's sentence is vacated, and the matter remanded for resentencing and sex offender registration notification, in accordance with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING AND SEX OFFENDER REGISTRATION NOTIFICATION**

---

[15] As part of our errors patent review, we also discovered discrepancies in the Louisiana Uniform Commitment Order ("UCO"). Specifically, section "B" of the UCO does not provide that the sentence imposed was a habitual offender sentence. Rather, it indicates that it was an original sentence. Also, under section "C" of the UCO, the date of the original sentence is noted as June 20, 2018, when in fact there was no original sentence imposed. Nevertheless, because this Court has vacated defendant's sentence and the trial court will have to prepare and issue a new UCO upon resentencing, there is no need to order correction of the discrepancies discovered in the UCO.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 3, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-237

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
JUSTIN B. LACOUR (APPELLEE)                    HONORABLE BRIDGET A. DINVAUT
                                               (APPELLEE)

### MAILED
BENNY S. GEORGE, JR. (APPELLANT)
ATTORNEY AT LAW
3308 TULANE AVENUE
SUITE 302
NEW ORLEANS, LA 70119