STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0430

STATE OF LOUISIANA

VERSUS

RUDOLPH LURDING

Judgment Rendered:   DEC 2 2 2021

Appealed from the
Twenty-first Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 1802624

Honorable Erika Sledge, Judge Presiding[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Scott M. Perilloux<br>Brett Sommer<br>Amite, LA | Counsel for Appellee,<br>State of Louisiana |
| Bertha M. Hillman<br>Covington, LA | Counsel for Defendant/Appellant,<br>Rudolph Lurding |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE:  WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

---

[1]While Judge Sledge is currently the trial court judge presiding over this matter, Judge Robert H. Morrison, III presided over the suppression hearing, and Judge Don Fendlason presided *ad hoc* over the trial court sentencing of the defendant.

**WHIPPLE, C.J.**

The defendant, Rudolph Lurding, was charged by bill of information with three counts of promotion, advertisement, or production of pornography involving juveniles under the age of thirteen (counts I – III), violations of LSA-R.S. 14:81.1(A)(1) and (E)(5)(b); molestation of a juvenile under the age of thirteen (C.M.[2]) (count IV), a violation of LSA-R.S. 14:81.2(A)(1) and (D)(1); and two counts of sexual battery of a juvenile under the age of thirteen (C.M.) (counts V and VI), violations of LSA-R.S. 14:43.1(A)(2) and (C)(2). He pled not guilty on all counts. He moved to suppress the evidence. Following a hearing, the motion was denied. The defendant applied to this court for supervisory relief from the ruling, but his writ application was denied. See State v. Lurding, 2020-0178 (La. App. 1st Cir. 5/12/20), 2020 WL 2461528 (unpublished writ action).[3]

Following a jury trial, the defendant was found guilty as charged by unanimous verdicts on all counts. On counts I – VI, he was sentenced on each count to thirty years at hard labor, with twenty-five years without probation, parole, or suspension of sentence, and the sentences to be served consecutively. He now appeals, assigning error to the denial of his motion to suppress. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

In October of 2017, following an investigation by the Mississippi Attorney General's Office (MAG), Anika Moore Bruner confessed to the manufacture and distribution of child pornography. She identified the defendant as "a recipient and a requester of these images." Bruner indicated she had been in an intimate

---

[2]This victim is referenced herein only by her initials. See LSA-R.S. 46:1844(W).

[3]Although a pretrial determination does not absolutely preclude a different decision on appeal, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility unless it is apparent, in light of a subsequent trial record, that the determination was patently erroneous and produced an unjust result. State v. Burgess, 2019-1603 (La. App. 1st Cir. 9/22/20), 315 So. 3d 279, 282 n.1, writ denied, 2020-01189 (La. 2/17/21), 310 So. 3d 1148.

relationship with the defendant, and during that relationship, he had confided his affinity for child pornography. She indicated the defendant had child pornography in his possession. She also alleged she and the defendant shared child pornography.

MAG used information from Bruner to locate the defendant and obtain a search warrant for his cabin. The defendant's iPhone was recovered pursuant to the search warrant. Forensic analysis of the iPhone identified a forensic artifact to a Dropbox account on which Bruner possessed child exploitation images. Pursuant to another search warrant, approximately eleven images and three videos of the defendant sexually abusing C.M., the eight-year-old daughter of his present girlfriend, were recovered.

C.M. testified at trial that the defendant used to date her mother. C.M identified herself as the naked person depicted in five photographs collected pursuant to the Dropbox search warrant. According to C.M., the defendant took the pictures in the living room of their house in Ponchatoula. She indicated she was "[s]even, probably just turning eight" when the pictures were taken. She claimed the defendant would "sometimes make [C.M.] take [her] clothes off after taking a shower so he could take pictures."

C.M. also identified herself as the person depicted in three videos presented to the jury. According to C.M., the defendant filmed the videos. She indicated that in the first two videos, the defendant was telling her to do the "[d]oggie style" position correctly so he could "[try] to make it feel good for [C.M.]". According to C.M., the third video depicted the defendant's hand "rubbing … on [C.M.'s] private parts." C.M. indicated she was "seven, probably just turning eight" when the videos were filmed. C.M. testified the defendant also forced her to watch videos of her mother in "those same positions."

The defendant denied any involvement in the production of the pictures or the

videos presented to the jury. In regard to videos, the defendant agreed he was in the videos, but denied that they depicted an eight-year-old girl. According to the defendant, the videos depicted "Cassandra East or Eastwood or Eastman," an eighteen to nineteen-year-old, and her boyfriend, B.C. The defendant claimed he was training Cassandra and B.C. in the "fetish" lifestyle. The defendant denied ever touching C.M. sexually or doing anything sexual to her.

## MOTION TO SUPPRESS

In his sole assignment of error, the defendant contends the trial court erred in denying his motion to suppress evidence. He argues that under the totality of the circumstances, Bruner was not a reliable informant and there was insufficient corroborating information to provide probable cause for a search warrant. He claims Bruner provided information that gave her a "good bargaining tool" on her life sentence. He further claims Bruner "did not implicate herself in criminal activity that would expose her to more jail time, rather by implicating [the defendant] she saw an opportunity to decrease her jail time."

When a search and seizure of evidence is conducted pursuant to a search warrant, the defendant has the burden to prove the grounds of his motion to suppress. LSA-C.Cr.P. art. 703(D). When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of an abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. However, a trial court's legal findings are subject to a *de novo* standard of review. State v. Friday, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 919, writ denied, 2011-1456 (La. 4/20/12), 85 So. 3d 1258.

Article 1, § 5 of the Louisiana Constitution requires that a search warrant issue only upon an affidavit establishing probable cause to the satisfaction of an impartial magistrate. See also LSA-C.Cr.P. art. 162. Probable cause exists when

4

the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. The facts establishing the existence of probable cause for the warrant must be contained within the four corners of the affidavit. Friday, 73 So. 3d at 920.

An issuing magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability" that evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983); State v. Byrd, 568 So. 2d 554, 559 (La. 1990). The process of determining probable cause for the issuance of a search warrant does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. Friday, 73 So. 3d at 920.

The review of a magistrate's determination of probable cause prior to issuing a warrant is entitled to significant deference by reviewing courts. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Gates, 462 U.S. at 236, 103 S. Ct. at 2331. Further, because of the preference to be accorded to warrants, marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. Friday, 73 So. 3d at 920.

It is well settled that even when a search warrant is found to be deficient, the

seized evidence may nevertheless be admissible under the good-faith exception of United States v. Leon, 468 U.S. 897, 919-20, 104 S. Ct. 3405, 3418-19, 82 L. Ed. 2d 677 (1984), wherein the United States Supreme Court held that the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in an objectively reasonable good-faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. Friday, 73 So. 3d at 923.

Under Leon, 468 U.S. at 923, 104 S. Ct. at 3421, four instances in which suppression remains an appropriate remedy are: (1) where the issuing magistrate was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient—in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Friday, 73 So. 3d at 923.

The instances in which suppression remains an appropriate remedy enunciated in Leon clearly reflect that suppression of evidence seized pursuant to an invalid warrant is not a remedy to be lightly considered. Furthermore, the jurisprudence presumes good faith on the part of the executing officer, and the defendant bears the burden of demonstrating the necessity for suppression of evidence by establishing a lack of good faith. Friday, 73 So. 3d at 923.

On July 16, 2018, Jack Lilley,[4] MAG, Division of Cyber Crime, Assistant

---

[4]The record contains different spellings of Agent Lilley's name. We use the spelling set forth in Agent Lilley's affidavit for search warrant.

Director of Investigations, applied for and obtained a search warrant for computers, cellular devices, and other related media located in Cabin 145 at 1400 Audubon Point Drive, Horn Lake, Mississippi. He listed the following facts and circumstances in support of the warrant:

> On July 12, 2018, during an investigation into the transmission of child pornographic imagery discovered to have been created during the course of a sexual assault of a three year old female child, a confession letter and follow-up statement was made to investigators by Anika Bruner. Anika Bruner stated the assault and subsequent images detailing it had been made at the request of a person known to her as Rudolph Lurding, also known as Rudy or Mojo. The letter consisted of a handwritten statement detailing a relationship with Lurding, including her allegation of him confiding in her his sexual attraction to children. She stated that she sent him images of her abuse of two different children on multiple occasions via electronic means, [e]specially Kik messenger, a mobile device based chat application.
>
> Anika stated that Lurding currently was in a dating relationship with a girlfriend named Amber who had an 8 year old daughter named C[remainder of name redacted]. Anika stated that Lurding had shared with her that he was sexually abusing C[remainder of name redacted] and has shared pictures of the abuse. She stated that he currently resides around Southaven, MS. Anika provided a former home address, work location, social media identifiers, and a vehicle description for Lurding.
>
> Public records searches and examination of publically available social media information revealed Lurding to be in a dating relationship with Amber....[5] Public posts showed Lurding and [Amber] to currently be at Yogi Bear's Jellystone Park in Horn Lake. Photographs posted by [Amber] show a young female child named C[remainder of name redacted]. Photographs posted by Lurding show a vehicle matching the description provided by Bruner, a white Chevrolet Camaro.
>
> On July 15th[,] at approximately 9:00pm, I conducted surveillance of the parking areas of Yogi Bear's Jellystone Park and located a white Chevrolet Camaro registered to Rudolph Lurding parked outside of Cabin 145. On July 16th[,] at approximately 2:00 pm, I observed a white female matching the social media photographs of Amber enter Cabin 145.

On September 3, 2019, the defendant moved to suppress evidence recovered

---

[5] We have omitted Amber's surname to protect the privacy of C.M. See LSA-R.S. 46:1844(W).

7

pursuant to the July 16, 2018 warrant and subsequent warrants involving a Google account, the defendant's car, and the defendant's cell phone.

Agent Lilley testified at the suppression hearing. In October of 2017, MAG received information from the National Center for Missing and Exploited Children that child exploitation images had been shared in and around Gulfport, Mississippi. Following an investigation, Bruner confessed to the manufacture and distribution of the child pornography. She confessed to two productions of child pornography and to molesting three children. She confessed to being an accomplice in the distribution of child pornography with the defendant. Additionally, she confessed to an offense "separate and apart" from the charges against the defendant.

In a letter and in interviews, Bruner identified the defendant as "a recipient and a requester of these images." Bruner stated she had shared the images with the defendant. She provided information identifying the defendant and had knowledge of his recent move to the Southaven area of Mississippi. Bruner also gave MAG the defendant's social media identifiers.

In Bruner's letter, she stated, "[b]y the time you get this, I'll be long gone." She identified the defendant as her former boyfriend and sexual partner. During their relationship, the defendant confided to Bruner that he had an affinity for child pornography and showed her images of child exploitation. Specifically, Bruner stated after giving her "a pill, Ecstasy, Molly," the defendant showed her a picture of "a skinny, white girl[,] no tits." He told her "this is what I like." Bruner told the defendant "yeah, I know, skinny white girls." The defendant said "no" and showed Bruner a picture of "a child." Bruner alleged she and the defendant shared child exploitation images with each other.

According to Bruner, the defendant was "in the process of molestation of" and had "already touched" the eight-year old daughter of Amber, his present

girlfriend. Bruner claimed Amber was aware of the abuse, but the defendant "keeps her drugged and blindfolded and is working his way to controlling her 100%." Bruner alleged Amber was raped as a child by her grandfather, and her father killed himself "because he couldn't handle the guilt."

Agent Lilley started to corroborate Bruner's statements and information. He used public records searches and Facebook and Instagram posts. He was able to corroborate the defendant's social media profiles, his former address, 102 South Southgate, Ponchatoula, and identified his present location - Jellystone Park in DeSoto County, Mississippi. Agent Lilley went to Jellystone Park and saw the vehicle Bruner indicated the defendant owned, which was registered to the defendant, parked outside of Cabin 145. Agent Lilley also saw the defendant's present girlfriend, as described by Bruner, Amber, enter Cabin 145. Amber is the mother of victim C.M.

Agent Lilley obtained a search warrant for Cabin 145. The defendant's iPhone and Amber's Samsung cell phone were recovered pursuant to the search warrant. Forensic analysis of the iPhone identified a "Dropbox token." A Dropbox token is a forensic artifact whereby Dropbox remembers a phone and password as well as a Dropbox link saved in the notes section of the phone. Pursuant to a grand jury subpoena, the Dropbox link was subsequently identified as the same account on which Bruner possessed child exploitation images. Agent Lilley also discovered log-on credentials to a Dropbox account associated with sluttyniggr@gmail.com and log-on credentials for emogirl67. Pursuant to another search warrant, that Dropbox was searched and found to contain images and video of the defendant sexually abusing C.M.

The iPhone also had Kik Messenger chat between the defendant and a profile associated with Bruner, which, according to Agent Lilley, stated, "I got my dick in C

last night." C.M. was depicted in media posts as "C."

The Louisiana Attorney General's Office subsequently obtained an arrest warrant for the defendant and a search warrant for his address at 851 Accomack Cove, Southaven, Mississippi. Sexual aids depicted in the video of the abuse of C.M. were recovered from that location.

The trial court denied the motion to suppress evidence. The court found the issue was whether law enforcement had exhibited sufficient probable cause to obtain a series of search warrants, which culminated in the seizure of video and photographic evidence from the defendant. The court noted MAG had conducted an investigation which led to the arrest of Bruner for sexual activity involving juveniles. Bruner subsequently provided MAG with a written letter that implicated the defendant. Bruner also told MAG the defendant was still engaged in activities which included the sexual exploitation of minors and provided his contact and internet information.

The court further noted MAG performed public records and social media searches as to the whereabouts of the defendant. MAG located a vehicle matching the description of the defendant's vehicle at an RV park in Mississippi. MAG was also able to corroborate claims made in Bruner's letter after observing the defendant's present girlfriend and her minor child. MAG obtained a search warrant and subsequently seized a cell phone from the defendant. MAG also discovered a "drop box account" linking the defendant and Bruner. Additionally, the court noted the defendant challenged the probable cause to obtain the first warrant and challenged the subsequent warrants as fruit of the poisonous tree. [6] The defendant

---

[6]See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963) ("[w]e need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint (citation omitted).'").

argued Bruner was not a known reliable informant, that the police did not perform sufficient follow up investigation to confirm her claims, and that the "suicidal statement" contained in Bruner's letter made her even less reliable.

The court applied the totality of the circumstances test under Gates. The court noted that Gates and its progeny required that much weight be given to the reliability of the informant and the corroborating circumstances. The court also found, however, the reliability of a statement could be bolstered by the informant implicating himself, such as when he indicates he is an accomplice. See State v. Huff, 392 So. 2d 1046, 1053 (La. 1980) ("[b]oth informants were named, and the reliability of their own information was clearly established by the fact that they were participants in the alleged crime and spoke from first hand [sic] knowledge. Also, the fact that each defendant made statements against their interests and which incriminated them, lends credibility to this source of information." (citations omitted)). The court found the letter provided by Bruner "certainly contains such implications."

Lastly, the court noted that in Friday, 73 So. 3d at 919-21, a case involving sexual activity and child pornography, probable cause was based on the statement of the defendant's ex-girlfriend, whose reliability had not otherwise been established, which gave specific details coupled with a statement "given in the other case to a different law enforcement officer as to the defendant's seeking treatment for addiction to pornography."

There was no error or abuse of discretion in the denial of the motion to suppress. The defendant fails to establish the trial court's ruling was unsupported by the evidence. See LSA-C.Cr.P. art. 703(D); Friday, 73 So. 3d at 919. Given all the circumstances set forth in the affidavit, there was a "fair probability" that evidence of a crime, specifically child pornography, would be found in the

11

defendant's cabin in Mississippi.

Bruner confessed to the manufacture and distribution of child pornography. She identified the defendant as "a recipient and a requester of these images." She also indicated that she had been in an intimate relationship with the defendant and that during that relationship, he had confided his affinity for child pornography. She indicated the defendant had child pornography in his possession. She also alleged she and the defendant shared child pornography. Bruner had detailed information concerning the defendant's location, his vehicle, and his social media identifiers. She also provided detailed information concerning the defendant's present girlfriend, including highly personal information concerning her rape and suicide in her family.

The trial court recognized that Bruner was not a proven informant, but correctly noted that the reliability of a statement can be bolstered by information which includes the informant implicating herself as an accomplice, and the jurisprudence recognizes that statements against interest are afforded greater credibility. See State v. Mena, 399 So. 2d 149, 152 (La. 1981) ("In the instant case, Woodard stated that he was scoring his cocaine from Mena. This admission was a declaration against penal interest because it supplied evidence against him of guilty knowledge, an essential element of the crime of the possession of a controlled dangerous substance. Admissions of crime carry their own indicia of credibility sufficient at least to support a finding of probable cause to search." (citations omitted)).

The record fails to support the defendant's claims that Bruner's reliability was compromised because she was attempting to obtain "a good bargaining tool on her life sentence[,]" and that she "did not implicate herself in criminal activity that would expose her to more jail time, rather by implicating [the defendant] she saw an

12

opportunity to decrease her jail time."

Indeed, the testimonial evidence supports the trial court's finding that the search warrant affidavit established probable cause. At the suppression hearing, the defense asked Agent Lilley whether Bruner's "providing information to [his] agency [would] have any impact on diminishing the potential sentence that Ms. Bruner might have[.]" He answered, "[a]bsolutely not. We never made that available to [Bruner]." The defense also questioned whether Bruner's claim that the defendant had requested and directed the production of pictures of her molesting a three-year-old child was "merely an attempt by her to try to diminish her culpability for an awful, terrible act by blaming it on someone else[.]" Agent Lilley rejected that argument, noting Bruner "also confesse[d] to the molestation of a three-year-old child, which we [had] no pictures of." Lastly, when Agent Lilley was asked if Bruner had told him that "everything she did[,] she did because of [the defendant]," he answered "No. [Bruner] didn't blame it entirely on [the defendant]. She just state[d] that he was knowledgeable about it, that they discussed it, they shared images of it." See State v. Clay, 2010-0450 (La. App. 1st Cir. 10/29/10), 2010 WL 4272986, *8 (unpublished).

Even had the initial search warrant been based on less than probable cause, under the Leon good-faith exception, the evidence seized pursuant to the warrant would not be suppressed. The defendant did not establish a lack of good faith on the part of the executing officer. There were no misleading statements contained in the affidavit. There was no evidence that the issuing magistrate, abandoned his neutral role in his issuance of the search warrant, nor was there anything on the face of the warrant that would make it so deficient that it could not be presumed valid. Agent Lilley provided the judge with information he had gathered during the investigation of Bruner, the defendant's former girlfriend and sexual partner, for

transmission of child pornographic imagery and molestation of a three-year-old child. Agent Lilley was not unreasonable in believing he provided the judge with sufficient information to issue a search warrant. Accordingly, suppression of the evidence would be inappropriate considering the Leon good-faith exception to the exclusionary rule. See Friday, 73 So. 3d at 923-24.

This assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**